HERBERT R. HOUGHTON *vs.* CHARLES KEVENEY & others.

Suffolk.    February 4, 1918. — April 20, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Wagering Contracts.   Limitations, Statute of.*

In a suit in equity under R. L. c. 99, §§ 4, 6, against a stockbroker and alleged equitable trustees, to recover money paid as margins on wagering contracts, the principal defendant is not liable unless he had reasonable cause to believe that the plaintiff intended that there should be no actual purchases or sales; but, by the terms of § 6, if the plaintiff did not own the securities at the time of giving the orders to sell and settlements were made without the completion

of the purchase or sale of the securities ordered to be bought or sold, this is *prima facie* evidence that there was an intention that there should be no actual purchase or sale and that there was reasonable cause to believe that such intention existed within the meaning of § 4 of the statute.

In a suit in equity under R. L. c. 99, §§ 4, 6, against a stockbroker and alleged equitable trustees to recover money paid as margins on wagering contracts, where four series of transactions were alleged and the defendant set up the statute of limitations, it appeared that the first two series of transactions had been balanced and "squared up" and that the plaintiff had given to the defendants a receipt in full covering them, and that these transactions were closed more than six years before the filing of the bill, and it was *held* that the different series of transactions were distinct from each other and did not constitute an open running account, and that the right to recover for payments made in the first two series of transactions was barred by R. L. c. 202, §.2.

BILL IN EQUITY, filed in the Superior Court on January 19, 1917, against the members of a firm of stockbrokers as the principal defendants and certain other defendants holding funds sought to be reached and applied as equitable assets of the principal defendants, under R. L. c. 99, §§ 4, 6, to recover money and securities alleged to have been paid and delivered to the principal defendants as margins on wagering contracts.

The answer of the principal defendants set up, among other matters, that the cause of action mentioned in the plaintiff's bill did not accrue within six years before the filing of the bill.

The defendants at first claimed a trial by jury and afterwards the case was referred to an auditor, who filed a report in regard to which the agreement was made which is stated in the opinion. Thereafter the case came on to be heard by *Wait*, J., who at the request of the parties reported it for determination by this court upon the pleadings, the auditor's report and the agreement of the parties, such judgment to be entered as law and justice required.

*H. T. Richardson*, for the plaintiff.

*A. E. Burr*, (*F. L. Simpson* with him,) for the defendants.

DE COURCY, J. This suit, based on the provisions of R. L. c. 99, § 4, was brought to recover money paid on margins under alleged wagering contracts in stocks made by the plaintiff with the principal defendants, Keveney and Sawtelle. These are referred to herein as the defendants; and no question arises as to the other defendants, who are merely equitable trustees. After the coming in of the auditor's report both parties waived the claim for a trial by jury and all objections to the auditor's admission or exclusion of evidence; and the plaintiff waived the statutory provision making

the auditor's report *prima facie* evidence, it being agreed that "the auditor's report should be treated as an agreed statement of all the facts material to the issue." The sole question before us is whether the plaintiff is entitled to recover on the facts so found and agreed to.

The defendants were partners doing business as stockbrokers in Boston. During the period beginning in January, 1908, and ending apparently in 1916, they acted as brokers for the plaintiff in transactions relative to the purchase and sale of stocks on margin; and from time to time he deposited with them certain stocks, bonds and money on account of such transactions. Among the findings of the auditor, (which, as above stated, are to be treated as agreed facts,) are the following: "In no case where he ordered sales of stock on margins did he own any shares to correspond with those which he ordered to be sold, and he was never asked by the defendants to furnish any of such shares to complete the transactions. The total number of shares of various stocks which he so ordered to be sold was four thousand four hundred and sixty. His other transactions on margins were orders to purchase various stocks totalling five thousand one hundred and eighty shares, none of which were ever delivered or offered to him by the defendants. . . . Whenever the plaintiff gave instructions to buy or sell shares of stock he intended that he should not actually receive or deliver any of the shares represented by his orders but intended to cover his orders by giving corresponding orders to sell or buy at such time as he considered most advantageous and to make such profit or loss as might result therefrom without having actually received or delivered any of the shares. . . . At all times when he gave the orders to purchase or sell stocks on margin, or made deposits of money or securities the plaintiff had no intention as to whether the defendants should or should not make actual purchases or sales in carrying out his orders; that he did not care what methods were pursued by them in carrying out the transactions; that he had no intention of receiving from or delivering to the defendants the securities which he ordered them to buy or sell for him on margin but intended that they should carry out his orders in any manner they saw fit until such time as he determined to close a transaction and make a profit or loss therefrom without his having received or delivered any of the shares. . . . At the times of the

various margin transactions with the plaintiff, the defendants had reasonable cause to believe that the plaintiff had no intention that he should receive or deliver any of the shares for which he gave orders for the purchase or sale."

During the hearings, the counsel for the defendants stated that in view of the recent decision of this court in the case of *Adams* v. *Dick*, 226 Mass. 46, "the defendants could not show any actual purchase or sale of stock (as therein defined) for which the plaintiff gave orders for them to buy or sell or that they had made any valid contracts therefor."

The provisions of § 4 of the statute applicable to the case are: "Whoever . . . upon margin . . . employs another to buy or sell for his account, any securities . . . , intending at the time that there shall be no actual purchase or sale, may sue for and recover in an action of contract . . . from the person so employed, any payment made, or the value of anything delivered, on account thereof, if such . . . person so employed had reasonable cause to believe that said intention existed; but no person shall have a right of action under the provisions of this section if, for his account, . . . the person so employed makes, in accordance with the terms of the . . . employment, personally or by agent, an actual purchase or sale of said securities . . . , or a valid contract therefor." The defendants rest their case upon the contention that in order to entitle the plaintiff to recover he must prove that he intended, at the time of the various transactions, that the defendants should not make actual purchases or sales in carrying out his orders. It seems plain from the language quoted that the intention "that there shall be no actual purchase or sale" referred to by the statute is the intention of the plaintiff, not that of his agent. The brokers are not made liable unless they had reasonable cause to believe that the plaintiff intended there should be no actual purchase or sale; nor even then if they make such actual purchase or sale, or a valid contract therefor. *Chandler* v. *Prince*, 214 Mass. 180, 182. But by the express terms of § 6, the fact that the plaintiff did not own the securities at the time of the giving of the order to sell, and the fact that settlements were made without the completion of the purchase or sale of the securities ordered to be bought or sold, are each made *prima facie* evidence "that within the meaning of § 4 there was an intention that

there should be no actual purchase or sale," and also "that there was reasonable cause to believe that said intention existed." We understand these provisions to be applicable to all the transactions in issue in this case, and they supply the positive intention that there should be no actual purchases or sales by the defendants on the plaintiff's orders. As was said in *Adams* v. *Dick*, 226 Mass. 46, 53, "The plaintiff made out a *prima facie* case by showing short sales of stock. The burden then rested on the defendants to prove actual purchases and sales or valid contracts therefor in defence, in order to escape from the liability established by the statute." And see *Marks* v. *Metropolitan Stock Exchange*, 181 Mass. 251, 255. On the admitted facts, especially in view of said provisions of § 6, the plaintiff has proven all the elements necessary to a recovery under the statute.

The first two series of transactions, however, are barred by the statute of limitations. The account which opened January 11, 1908, was balanced or "squared up" September 25, 1908. The transactions begun in September or October, 1909, were ended in January, 1910, when the plaintiff gave the defendants a receipt in full. The finding is that each of these series of transactions was considered by both parties to be closed at the times when active transactions under them ceased. They were distinct from each other and did not constitute an open running account. The right of action created by the statute is one of contract, and plainly the six year limitation of R. L. c. 202, § 2, is applicable.

The findings of the auditor are correct, — that the plaintiff is entitled to recover under the third and fourth series of transactions. In accordance with the report judgment is to be entered in his favor for the sum of $8,019.24; and it is

*So ordered.*